[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 193.]

THE STATE EX REL. NICHOLSON, APPELLANT, *v*. COPPERWELD STEEL

COMPANY; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Nicholson v. Copperweld Steel Co*., 1996-Ohio-198.]

*Workers' compensation—R.C. 4123.60 affords dependents, upon timely application, the right to claim compensation for which a decedent was eligible but was not paid before death—Mandamus available to enforce this right—Industrial Commission's order denying application for compensation an abuse of discretion when requirements of Noll not met.*

(No. 94-2352—Submitted September 24, 1996—Decided December 18, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD08-1091.

_____

{¶ 1} Appellant, Marian Nicholson, seeks a writ of mandamus (1) to vacate appellee Industrial Commission of Ohio's denial of her "Application for Payment of Compensation Accrued at Time of Death," and (2) to award her the permanent total disability compensation ("PTD") she claims her husband should have received prior to his death.

{¶ 2} Marian's husband, Charles Nicholson, was injured in 1973 and again in 1974 while working for Copperweld Steel Company. His workers' compensation claims were recognized for "right foot" and "contusion and ecchymosis of left buttock, strain of left sacroiliac, aggravation of pre-existing arthritis of the lumbar spine, spondylolisthesis at L5/S1 and central bulging discs at L4/5, L5/S1." In July 1990, Charles applied for PTD. His physician, Dr. Martin J. Lohne, reported that Charles was "100% disabled" due to his back injury. A commission specialist, Dr. David M. Baroff, reported Charles had a twenty-five percent permanent partial impairment based on the allowed back condition, but

concurred that Charles was unfit for sustained remunerative employment. Charles died on February 18, 1992, before any disposition of his PTD application.

{¶ 3} On April 13, 1992, Marian applied, as Charles's dependent, for the compensation Charles could have received prior to his death. The commission denied her application in February 1993, finding that Charles had been permanently and totally disabled when he died, but not due to either of his allowed conditions. The commission explained:

"The reports of Doctors Lohne, Baroff and McCloud were reviewed and evaluated. This order is based particularly upon the report of Doctor McCloud.

"The medical evidence found persuasive includes the report of Commission orthopedist Dr. McCloud. The report, which consists of a review of both allowed claim files subsequent to the claimant's death, finds a 30% permanent partial impairment due to the claimant's allowed conditions and opines these conditions did not render the claimant permanently totally impaired. It is noted that the claimant's course of treatment for his allowed conditions was exclusively conservative in nature. The report of Commission specialist Dr. Baroff, which finds only a 25% permanent partial impairment but opines the claimant is permanently disabled from any work, is found unpersuasive in that it is not supported by objective medical evidence on file. Medical evidence on file indicates at the time of his death the claimant suffered from a seizure disorder and arthritis in both knees. The death certificate indicates the claimant's immediate cause of death was cardiac arrest, with meningeal sarcoma and coronary a[r]teriosclerotic heart disease listed as contributing causes. Therefore, while the Commission finds the claimant to have been incapable of gainful employment at his date of death, it is determined that the claimant's inability to work was not causally related to the allowed conditions in the claim files. This finding is based on a consideration of Dr. McCloud's report, the claimant's conservative course of treatment, the claimant's advanced age of 68 at his date of death, and his serious non-work related medical conditions.

2

Accordingly, the IC-2 filed 7/17/90 [Charles's application] and the C-6 filed 4/13/92 [Marian's application] are denied."

{¶ 4} Marian then filed her complaint in mandamus in the Court of Appeals for Franklin County. She argued that the allowed conditions and Charles's other vocational characteristics had made him unfit for sustained remunerative employment and, therefore, that the commission had abused its discretion by denying her payment for the PTD Charles should have received prior to his death. A referee recommended denial of the writ without reaching Charles's PTD eligibility. The referee concluded that Charles's claim had abated upon his death and that Marian had no legal right, under R.C. 4123.60, to pursue payment for his PTD by an action in mandamus. The court of appeals agreed, adopted the referee's reasoning, and denied the writ.

{¶ 5} The cause is before this court upon an appeal as of right.

_____

*Jurus Law Offices* and *Michael J. Muldoon*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Charles Zamora,* Assistant Attorney General, for appellee.

_____

***Per Curiam.***

{¶ 6} Two questions are presented for our review: (1) Is mandamus available to compel payment, pursuant to R.C. 4123.60, to a decedent's spouse of the PTD the decedent could have received prior to his death? and (2) Did the commission abuse its discretion in finding that Charles was not entitled to PTD and denying Marian the payments available under R.C. 4123.60? For the reasons that follow, we hold that R.C. 4123.60 affords dependents, upon timely application, the right to claim compensation for which a decedent was eligible but was not paid before death and that mandamus is available to enforce this right. We further hold that the commission's order is not sufficiently specific under *State ex rel. Noll v.*

*Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, and, therefore, constitutes an abuse of discretion. Accordingly, we reverse and return this cause to the commission for further consideration and an amended order.

*R.C. 4123.60*

{¶ 7} Marian applied for payment of compensation for which Charles qualified before he died pursuant to R.C. 4123.60, which provided, in part:

"In all cases of death from causes other than the injury or occupational disease for which award had theretofore been made on account of temporary, or permanent partial, or total disability, in which there remains an unpaid balance, representing payments accrued and due to the decedent at the time of his death, the commission may, after satisfactory proof has been made warranting such action, award or pay any unpaid balance of such award to such of the dependents of the decedent, or for services rendered on account of the last illness or death of such decedent, as the commission determines in accordance with the circumstances in each such case. *If the decedent would have been lawfully entitled to have made application for an award at the time of his death the commission may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent,* or for services rendered on account of the last illness or death of such decedent*, as the commission determines in accordance with the circumstances of each case, but such payments may be made only in cases in which application for compensation was made in the manner required by sections 4123.01 to 4123.94 of the Revised Code, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person."* (Emphasis added.) (136 Ohio Laws, Part I, 1075, 1169-1170.)

{¶ 8} The court of appeals concluded that Charles's PTD claim abated upon his death, which is true under *State ex rel. Hamlin v. Indus. Comm.* (1993), 68 Ohio

St.3d 21, 22, 623 N.E.2d 35, 36.  The court further held that his surviving spouse had no right under R.C. 4123.60 to "step into * * * [his] shoes" for the purpose of pursuing his claim, and this is also true.  *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379, paragraph three of the syllabus (where deceased claimant was paid lump-sum advance for anticipated future compensation, advance was not "accrued compensation" to which dependents may be entitled under R.C. 4123.60, and a surviving spouse cannot pursue the decedent's claim for the advance).  The commission urges us to affirm for the same reasons.

**{¶ 9}** We, however, read the emphasized language of R.C. 4123.60 to expressly authorize a deceased worker's dependents' receipt of compensation for which the worker qualified and should have received before death.  Indeed, we have already said that where a deceased worker's dependents' claims accrued compensation under R.C. 4123.60, "[t]he award is not personal to the worker because R.C. 4123.60 specifically provides that dependents may recover the compensation the deceased worker was entitled to receive." *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 177, 2 OBR 715, 719, 443 N.E.2d 962, 966, fn. 5.  For this reason, an R.C. 4123.60 award is similar to a death benefit award under R.C. 4123.59 -- both exist separate and apart from the rights of the injured worker.  *Nyitray* at 174, 2 OBR at 716, 443 N.E.2d at 963; *Manns*, 39 Ohio St.3d at 190, 529 N.E.2d at 1381.

**{¶ 10}** Thus, contrary to the court of appeals' decision, Marian is not attempting to pursue Charles's PTD claim, which he filed pursuant to R.C. 4123.58, on his behalf.  Rather, when Marian filed her application for accrued compensation, she instituted her own claim for compensation Charles could have received, a claim that is expressly sanctioned by R.C. 4123.60.  As a result, Marian's claim was not abated by Charles's death—her interests actually arose at that time and, under R.C.

4123.60, they became independently actionable. *Nyitray* at 174, 2 OBR at 716, 443 N.E.2d at 963.

{¶ 11} The court of appeals also concluded that R.C. 4123.60 requires the commission to decide a dependent's application for accrued compensation, but stops short of authorizing a dependent's suit in mandamus if the application is denied. The court came to this conclusion because R.C. 4123.60 does not identify mandamus as an avenue for challenging the commission's denial of compensation and because the statute states that the commission "may" compensate dependents of deceased workers, connoting a discretionary decision. Neither consideration, however, justifies the appellate court's refusal to recognize Marian's claim as actionable in mandamus.

{¶ 12} The court of appeals cited *State ex rel. Yurcsisin v. Indus. Comm.* (1944), 142 Ohio St. 479, 27 O.O. 408, 52 N.E.2d 991, which noted the discretionary language of the predecessor to R.C. 4123.60, but did not deny mandamus on that basis alone. The *Yurcsisin* court instead held that a widow had failed to prove claimed compensation was "accrued and due" under the first sentence of the statute. This holding does not bar mandamus where such proof exists.

{¶ 13} Furthermore, in *Nyitray* we granted mandamus to remedy the denial of equal protection represented by former R.C. 4123.60. At that time, R.C. 4123.60 denied accrued compensation to dependents of workers who died of industrial injury or occupational disease, but allowed compensation for qualifying dependents of workers who died of other causes. We held that no rational basis justified a distinction based on cause of death and granted the writ. By affording this relief, we effectively ordered the commission to award any compensation for which the surviving spouse in that case qualified. Thus, R.C. 4123.60 is enforceable through mandamus.

*PTD Denial*

{¶ 14} In reviewing the PTD application of a claimant who is only permanently partially impaired due to industrial injury, the commission must consider the claimant's age, work experience, education, or other relevant nonmedical or vocational characteristics, as required by *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946, and determine whether the claimant is nevertheless foreclosed from sustained remunerative employment. *State, ex rel. Hopkins v. Indus. Comm.* (1994), 70 Ohio St.3d 36, 38,635 N.E.2d 1257, 1259; *State ex rel. Lawrence v. Am. Lubricants Co* (1988), 40 Ohio St.3d 321, 322, 533 N.E.2d 344, 345-346; *State ex rel. Hartung v. Columbus* (1990), 53 Ohio St.3d 257, 258, 560 N.E.2d 196, 198. And, for all its determinations, *Noll, supra*, requires the commission "to prepare orders that 'are fact-specific and which contain reasons explaining its decisions. * * * Such order[s] must specifically state what evidence has been relied upon to reach its conclusion and, most important, briefly explain the basis of its decision.'" *State ex rel. Pass v. C.S.T. Extraction* Co. (1996), 74 Ohio St.3d 373, 375, 658 N.E.2d 1055, 1057, quoting *Noll*, 57 Ohio St.3d at 206, 567 N.E.2d at 249. The commission's failure to specify and explain the impact of the *Stephenson* factors, in accordance with *Noll*, is an abuse of discretion for which mandamus is the remedy. *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376.

{¶ 15} Marian argues that the commission did not sufficiently account for the *Stephenson* factors when it denied her application for compensation that had accrued to Charles before he died. We agree.

{¶ 16} Charles was approximately seventy-years old and a nursing-home resident when he died. He had a seventh-grade education and had been employed as a railroad brakeman and steel mill laborer. He had not worked since his injury in 1974, and he appeared to have no rehabilitation potential.

**{¶ 17}** The commission noted Charles's age in its order but no other nonmedical characteristics. It instead relied completely on Dr. McCloud's October 1992 report, which, except for one or two conclusions, reads as if he were determining Charles's cause of death for a death-benefit claim, rather than Charles's fitness for sustained remunerative employment on his application for PTD. The report stated:

"HISTORY

"Injured 4-30-74

"1) 562043-22 is allowed for right foot # 2) 73-41359 is allowed for contusions and ecchymosis of left buttock, strain of left sacroiliac, aggravation of pre-existing arthritis of lumbar spine and spondylolisthesis at L5-S1 with disc bulging at L4-5 and L5-S1. He was a general laborer for the Copperweld Steel Company.

"I was asked to review the industrial records to help determine if there was medical evidence consistent with considering this claimant unable to perform any sustained work activity. It is important to note that at the time of his death his back injury was some 19 years old and his foot injury was some 18 years old. His treatment in regard to each of these problems was conservative in nature and I did review a variety of clinical notes from Dr. Burrows [*sic*, Baroff]. The charts are quite thick but there is nothing in the chart that would indicate any specific or radical changes that occurred through his clinical course as the conservative treatment and various conservative modalities were continued throughout his clinical history in regard to these claims. The claimant did die on February 18, 1992 and I did review the death certificate as prepared by the coroner. The primary cause of death was listed as a cardiac arrest with a contributing factor of meningeal sarcoma. Further, the claimant was felt to have arterial sclerotic heart disease as a contributing factor as well.

"In summary, this individual died as a result of cardiac arrest and the precipitating factor as well as the contributing factors [was] described on the death certificate by the coroner. Neither the primary factor in relation to his death nor the contributing factors in any fashion can be related to the conditions permitted to be a portion of either of these two claims. Therefore, review of the medical information in the record would indicate that this claimant cannot be considered permanently and totally impaired based upon the conditions permitted to be a portion of either claim.

"* * *

"562043-22 = 0%  [Percentage of impairment]

"73-41359  = 30% [Percentage of impairment]."

{¶ 18} To receive PTD, Marian must demonstrate not only Charles's inability to perform sustained remunerative employment, but also that the inability is causally related to the allowed conditions. *State ex rel. LTV Steel Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 22, 23, 599 N.E.2d 265, 267. "Permanent total disability cannot be based, wholly or partially, on nonallowed medical conditions." *State ex rel. Erico Products, Inc. v. Indus Comm.* (1994), 70 Ohio St.3d 661, 663, 640 N.E.2d 824, 826, citing *State ex rel. Fields v. Indus. Comm.* (1993), 66 Ohio St.3d 437, 613 N.E.2d 230. However, "[t]he presence of debilitating nonallowed conditions * * * does not preclude permanent total disability compensation so long as the allowed conditions * * * independently [or together with nonmedical disability factors, *LTV Steel* at 24, 599 N.E.2d at 267] prevent sustained remunerative employment." *Erico at 663, 640 N.E.2d at 826,* citing *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 619 N.E.2d 1018.

{¶ 19} Only the total absence of impairment attributable to allowed conditions eliminates the commission's obligation to consider nonmedical factors recognized in *Stephenson*. In that situation, "there is no allowable impairment with which the nonmedical factors could conceivably combine to produce [a finding that

the claimant was unfit for sustained remunerative employment].” *Erico* at 663, 640 N.E.2d at 826. Here, the commission was persuaded that Charles was thirty-percent impaired due to his allowed back condition, but did not finish the PTD analysis. It overlooked that the combination of the thirty percent impairment and Charles's education, age, and work history might have precluded his return to work independently of his otherwise failing health.

**{¶ 20}** The commission argues, however, that Dr. McCloud's report was “some evidence” upon which it could conclude that Charles's permanent and total disability was exclusively due to nonallowed conditions. The commission cites *LTV Steel*, in which we declared it “pointless” to order an explanation of how nonmedical factors justified a PTD award. *LTV Steel* at 25, 599 N.E.2d at 267. There, medical evidence attributed permanent and total disability exclusively to nonallowed conditions and, thus, necessarily established that the claimant's inability to work was not due to the allowed conditions.

**{¶ 21}** *LTV Steel* sanctions the commission's noncompliance with *Noll* where it legitimately denies PTD on evidence that exclusively attributes disability to nonallowed conditions. *LTV Steel,* 65 Ohio St.3d at 24-25, 599 N.E.2d at 267. *LTV Steel*, however, was distinguished on this basis in *Waddle,* and the distinction applies here for the reasons just discussed:

“*LTV* held that the presence of a totally disabling nonindustrial condition negated the need for further *Noll* consideration. Unlike this case, however, the claimant in *LTV* suffered no underlying impairment whatsoever from the allowed condition. There was thus no allowed condition/impairment with which the *Stephenson* factors could conceivably combine to produce permanent total disability. The present claimant clearly has a work-related physical impairment with which the *Stephenson* factors could combine.

“For the above reasons, the judgment of the court of appeals [granting a writ of mandamus] is affirmed[,] and the cause is returned to the commission for

10

additional consideration and and amended order consistent with *Noll." Waddle* at 458, 619 N.E.2d at 1022-1023.

{¶ 22} Accordingly, we reverse the judgment of the court of appeals as to the availability of mandamus to enforce R.C. 4123.60, and issue a limited writ returning the cause to the commission for compliance with the specificity requirements of *Noll* and an amended order.

*Judgment reversed and*
*limited writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

———————————