{¶ 10} Because I do not believe that the State Teachers Retirement System Board of Ohio ("STRB") abused its discretion in declining to apply the exception contained in Ohio Adm. Code3307:1-4-01(A), I respectfully dissent.
 {¶ 11} R.C. 3307.501(B) provides that, in determining final average salary ("FAS"), "compensation" has the same meaning as set forth in R.C. 3307.01(L) except that it does not include any amount resulting from a percentage increase paid to a member during the member's two highest years of compensation that exceeds the greater of: (1) the highest percentage increase paid to the member during any of the three years immediately preceding the two highest years of compensation; or (2) a percentage increase paid to the employee as part of an increase generally applicable to members employed by the employer. However, Ohio Adm. Code 3307:1-4-01(A) permits STRB to include amounts that would otherwise be excluded under R.C. 3307.501(B) if certain requirements are satisfied. Ohio Adm. Code 3307:1-4-01(A) does not require STRB to apply this exception if the conditions are met. It simply gives STRB the discretion to apply the exception if the conditions are met. Given that the only reason relator received greater compensation in fiscal year 2000-2001 was because two of relator's summer salaries were reported in the same fiscal year due to Youngstown State's switch from a quarter system to a semester system, and not due to any salary increase, STRB did not abuse its discretion by declining to apply the exception. Therefore, I would sustain the objections and deny the writ of mandamus.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Stephen Hanzely, : Relator : v. : No. 03AP-1125 State Teachers Retirement System : (REGULAR CALENDAR) Board of Ohio, : Respondent. :
 MAGISTRATE'S DECISION Rendered on June 18, 2004 Green Haines Sgambati Co., L.P.A., Ira J. Mirkin and StanleyJ. Okusewsky, III, for relator.
Jim Petro, Attorney General, and John E. Patterson, for respondent.
 IN MANDAMUS {¶ 12} In this original action, relator, Stephen Hanzely, requests a writ of mandamus ordering respondent State Teachers Retirement Board ("STRB") to vacate its decision refusing to grant one of the exceptions set forth at Ohio Adm. Code3307:1-4-01(A) to the statutory limitation on compensation in the calculation of final average salary ("FAS") set forth at R.C.3307.501, and to enter a decision that recalculates FAS based upon recognition of one of the exceptions to the statutory limitations on compensation.
Findings of Fact:
 {¶ 12} 1. In the fall 1968, relator began his employment with Youngstown State University ("YSU") as a member of its faculty in the Physics and Astronomy Department. Relator was so employed until his retirement from YSU in May 2002. For 32 consecutive summers, with rare exception, relator taught one lecture course and the associated laboratory course as appropriate.
 {¶ 13} 2. As a member of the State Teachers Retirement System ("STRS"), relator applied to STRS for a service retirement pension.
 {¶ 14} 3. YSU operates on a fiscal year that begins on July 1st and ends on June 30th.
 {¶ 15} 4. In fiscal year 2000-2001, YSU switched from a quarter system to a semester system starting with the fall 2000 academic term. In switching to the semester system, the academic year starts earlier and ends earlier than under the quarter system. Under the quarter system, the first semester session usually commenced around mid-June and ended around the third week of July and, thus, the first summer session bridged two fiscal years under the quarter system. Under the new semester system, the first summer term ended on June 30th and, thus, did not bridge to another fiscal year as had previously occurred.
 {¶ 16} 5. In determining FAS, STRS determines the sum of the member's annual compensation for the three highest years of compensation for which the member has contributed to STRS and then divides that sum by three. R.C. 3307.501(C).
 {¶ 17} 6. In May 2002, YSU completed for STRS a "Deposit and Service Report" that states relator's earnings for fiscal years beginning 1996-1997 through 2001-2002. However, YSU's reporting of relator's earnings for the fiscal years was based upon the dates that relator was paid for his teaching activities. Consequently, STRS recalculated relator's fiscal year earnings based upon the fiscal year in which compensation was actually earned. STRS's recalculation impacted the fiscal year placement of summer term earnings. By letter dated January 27, 2003, relator was informed of STRS's recalculation of the fiscal year earnings. STRS's recalculation of fiscal year earnings based upon when the work activity occurred rather than the payment dates for work performed is not an issue in this action.
 {¶ 18} 7. STRS's recalculation of relator's fiscal year earnings produced the following schedule of earnings:[1]
 Fiscal Year Earnings
1995-1996 $93,793 1996-1997 $94,573 1997-1998 $84,495 1998-1999 $89,805 1999-2000 $89,642 2000-2001 $106,174 2001-2002 $89,217
 {¶ 19} 8. STRS's calculation of FAS is premised upon fiscal year earnings for 2000-2001, 1996-1997, and 1995-1996, which are relator's three highest years of compensation.[2]
 {¶ 20} 9. By letter dated February 3, 2003,[3] STRS informed relator as follows:
In your case, your FAS has been limited because the earnings in your FAS years increased at a higher percentage than in recent years due to an increase in supplemental earnings in the 2000/01 school year.
Your earnings for 2000/01 were $106,174, which was an 12.27% increase over your second highest year of earnings (1996/97). STRS Ohio may grant the higher of either your largest percentage increase in the three years prior to 2000/01 (6.28%) or your employer's percentage increase generally applicable to other members employed by your employer (3.0%). You were allowed a 6.28% increase for 2000/01, or $100,512 in total earnings.
 {¶ 21} 10. In sum, in calculating FAS, STRS adjusted actual fiscal 2000-2001 earnings of $106,174 to $100,512 based upon the statutory limitation set forth at R.C. 3307.501.
 {¶ 22} 11. STRS's FAS calculation adds the adjusted earnings for the three highest years of compensation and divides by three:[4]
 Fiscal Year Adjusted Earnings
1995-1996 $93,793 1996-1997 $94,573 2000-2001 $100,512
 {¶ 23} 12. STRS's FAS calculation is $96,293. Without the adjustment of fiscal year 2000-2001 earnings, FAS would be calculated at $98,180.[5]
 {¶ 24} 13. Relator administratively appealed the STRS FAS calculation to the STRB pursuant to R.C. 3307.501(E).
 {¶ 25} 14. By letter dated June 23, 2003, STRB informed relator that his FAS calculation shall remain at $96,293.[6]
 {¶ 26} 15. On November 12, 2003, relator, Stephen Hanzely, filed this mandamus action.
Conclusions of Law:
 {¶ 27} The magistrate finds that STRB abused its discretion by refusing to grant an exception to the statutory limitation on compensation. Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 28} R.C. 3307.01(L)(1) states in part:
Except as provided in this division, "compensation" means all salary, wages, and other earnings paid to a teacher by reason of the teacher's employment, including compensation paid pursuant to a supplemental contract. * * *
 {¶ 29} R.C. 3307.501 states in part:
(A) As used in this section, "percentage increase" means the percentage that an increase in compensation is of the compensation paid prior to the increase.
(B) Notwithstanding division (L) of section 3307.01 of the Revised Code, for the purpose of determining final average salary under this section, "compensation" has the same meaning as in that division, except that it does not include any amount resulting from a percentage increase paid to a member during the member's two highest years of compensation that exceeds the greater of the following:
(1) The highest percentage increase in compensation paid to the member during any of the three years immediately preceding the member's two highest years of compensation * * *.
(2) A percentage increase paid to the member as part of an increase generally applicable to members employed by the employer. * * *
(C) The state teachers retirement board shall determine the final average salary of a member by dividing the sum of the member's annual compensation for the three highest years of compensation for which the member made contributions plus any amount determined under division (E) of this section by three * * *.
* * *
(E) The state teachers retirement board shall adopt rules establishing criteria and procedures for administering this division.
The board shall notify each applicant for retirement of any amount excluded from the applicant's compensation in accordance with division (B) of this section and of the procedures established by the board for requesting a hearing on this exclusion.
Any applicant for retirement who has had any amount excluded from the applicant's compensation in accordance with division (B) of this section may request a hearing on this exclusion. Upon receiving such a request, the board shall determine in accordance with its criteria and procedures whether, for good cause as determined by the board, all or any portion of any amount excluded from the applicant's compensation in accordance with division (B) of this section, up to a maximum of seventy-five hundred dollars, is to be included in the determination of final average salary under division (C) of this section. Any determination of the board under this division shall be final.
 {¶ 30} Supplementing the statute, Ohio Adm. Code 3307:1-4-01
captioned "Compensation includible in the determination of final average salary," states:
The following criteria and procedures are established by the state teachers retirement board pursuant to section 3307.501 of the Revised Code.
(A) Where the two highest years of compensation certified for an applicant for service retirement include a percentage increase otherwise excluded by division (B) of section 3307.501 of the Revised Code, the executive director of the state teachers retirement system or his designee may include all or part of such percentage increase in the calculation of final average salary, up to a maximum of seventy-five hundred dollars, if:
* * *
(2) The same percentage increase was paid to other individuals employed in a similar capacity by the same employer, if no more than one half of such similarly employed individuals have made application for service retirement; or
(3) The executive director of the state teachers retirement system or his designee determines that other good cause exists for inclusion.
 {¶ 31} Unfortunately, analysis must begin with respondent's misstatement of the issue before this court. According to respondent, the issue presented here is whether respondent acted arbitrarily:
* * * [I]n rejecting Relator's definition of a year as including the nine (9) month academic year as well as two (2) summer sessions (summer of 2000 and summer of 2001) in determining Respondent's Final Average Salary for purposes of retirement.
(Respondent's brief at iii.)
 {¶ 32} In respondent's brief, respondent argues:
During the year in question, Relator states that compensation was earned from May 21, 2000 [sic] through June 30, 2001. * * * Relator further submits that this approximately thirteen and one half (13½) month period should be considered a year for purposes of calculating his FAS.
STRS logically, reasonably, and with sound judgment, concluded that the compensation in question should be moved into the fiscal year in which it was earned. There is only one summer per year, not two as argued by Relator.
Id. at 3.
 {¶ 33} In the concluding paragraph of its brief, respondent states:
Relator bears the burden of establishing that STRS abused its discretion in the calculation of his FAS. Relator has failed to do so. STRS acted reasonably in allocating compensation to the fiscal year earned rather than to the year paid. For all of the above-mentioned reasons, STRS respectfully submits that the administrative decision must be affirmed.
Id. at 5.
 {¶ 34} As previously noted, by letter dated January 27, 2003, relator was informed of STRS's recalculation of fiscal year earnings based upon when the work activity occurred rather than the payment dates for work performed. The STRS letter of January 27, 2003 (which the parties submitted to this court by way of a supplemental stipulation), states that the employer (YSU) had reported fiscal year earnings for 2000-2001 to be $110,259, which included summer earnings not reported in the year earned. STRS recalculated fiscal year earnings for 2000-2001 to be $106,174.
 {¶ 35} Contrary to respondent's suggestion here, relator does not dispute STRS's recalculation of fiscal year earnings for 2000-2001 at $106,174 based upon when the work was performed.
 {¶ 36} Clearly, contrary to respondent's assertions here, this action is not about "[r]elator's definition of a year." Contrary to respondent's assertion, relator did not ask respondent to recognize an approximately thirteen and one-half month period to be considered a year for purposes of calculating his FAS. Nor did relator ask respondent to include two summers into one year. (Respondent incorrectly asserts that relator stated that compensation was earned from May 21, 2000 through June 30, 2001 during the "year in question." In fact, relator stated that during the summer of 2001, the first summer term began on May 21st and ended on June 30th.)
 {¶ 37} Clearly, relator's claim to compensation in the amount of $106,174 for fiscal year 2000-2001 is an amount that, by STRS's own recalculation, was earned during a one year period.{¶ 38} In sum, respondent's defense to this action lacks merit.
 {¶ 39} That respondent's defense to this action lacks merit, however, does not automatically entitle relator to a writ of mandamus ordering a FAS recalculation. This court must review the record to determine whether STRB's decision was an abuse of discretion. See State ex rel. Ryan v. State Teachers RetirementSys. (1994), 71 Ohio St.3d 362.
 {¶ 40} The record before this court shows that, by letter dated February 17, 2003, relator presented the following written arguments to STRS in support of granting an exception to the R.C.3307.501(B) limitation on compensation. Relator's February 17, 2003 letter to STRS states:
I also wish to take this opportunity to summarize the reasons why I believe the limitation imposed on my FAS should be removed.
• * * * Faculty salaries at Youngstown State University have been collective bargained since 1973. Thus, increases reflected in my employment contracts — be it for an academic year or a summer term — were granted without exception to every other member of the bargaining unit.
• The significant increase in my reported earnings for fiscal year 2000-2001 is due exclusively to YSU's decision to switch from the quarter system to the semester system starting with the Fall 2000 term. The requisite changes in the academic calendar and in our collective bargaining agreement brought about a unique set of circumstances that resulted in TWO summer salaries being reported in the SAME fiscal year for all faculty members who, like I, taught during the Summer 2000 term and during the first summer session of 2001. * * *
• For 33 consecutive summers as a YSU faculty member, I taught one lecture course (and the associated laboratory course, as appropriate). Summer 2001 — the first under the semester system — was no exception. * * *
* * *
I wish to emphasize that the limitation placed on my FAS was triggered by circumstances beyond my control; namely, YSU's decision to switch from the previous quarter system to the current semester system and the changes this conversion necessitated in our collective bargaining agreement. I did not assume "extra duties" nor did I accept an overload assignment. I did not seek special employment opportunities to enhance my FAS nor was I offered any. I strongly believe, therefore, that my appeal qualifies under one of the exceptions permitted by ORC 3307. I also believe it satisfies the "good cause" exception previously granted by the STRS Board due to changes in collective bargaining agreements.
(Emphasis sic.)
 {¶ 41} Unfortunately, STRB's June 23, 2003 letter informing relator that his FAS shall remain at $96,293 offers this court no insight as to why STRB refused to grant an exception to the statutory limitation. In conclusory fashion, STRB announced: "Unfortunately, the earnings excluded in the calculation of your FAS were not the result of any recognized reasons for making exceptions to the statutory exclusion."
 {¶ 42} While presumably STRB has no duty to explain its refusal to grant the exception to the statutory limitation, seeState ex rel. Pipoly v. State Teachers Retirement Sys.,95 Ohio St.3d 327, 2002-Ohio-2219, STRB's failure to do so on the administrative record or by way of briefing to this court, renders this court's task more difficult.
 {¶ 43} This magistrate has carefully reviewed the record that STRB certified to this court. There is nothing in the record to discredit relator's claim that the percentage increase in compensation paid to him for fiscal year 2000-2001 was solely caused by YSU's decision to switch from a quarter system to a semester system, and that all YSU faculty who regularly taught during the summer term experienced the percentage increase in compensation for fiscal year 2000-2001.
 {¶ 44} Given that relator's claim is not in any way discredited by the record, Ohio Adm. Code 3307:1-4-01(A)(2)'s exception to the statutory limitation on compensation applies to relator's case:
(2) The same percentage increase was paid to other individuals employed in a similar capacity by the same employer, if no more than one half of such similarly employed individuals have made application for service retirement * * *.
 {¶ 45} STRS does not claim here, nor is there any evidence in the record to suggest, that more than one-half of such similarly employed YSU faculty have made application for service retirement.
 {¶ 46} The magistrate further notes that STRB could not claim that its decision refusing to grant an exception to the statutory limitation on compensation is not reviewable in mandamus simply because Ohio Adm. Code 3307:1-4-01(A) provides that the executive director of STRS or his designee may include all or part of such percentage increase in the calculation of FAS if an exception exists. The rule's use of the word may in its delineation of STRS's duty in calculating FAS does not grant to STRS unbridled discretion in its decision to grant or deny an exception to the statutory limitation on compensation, nor can the use of the word may render relator's claim unreviewable in mandamus. See State ex rel. Nicholson v. Copperweld Steel Co.
(1996), 77 Ohio St.3d 193, 197 (provision in R.C. 4123.60 that the Industrial Commission of Ohio may award benefits to a deceased injured worker's dependent does not justify a court's refusal to recognize the relator's claim as actionable in mandamus).
 {¶ 47} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent STRB to vacate its decision refusing to grant an exception to R.C. 3307.501's statutory limitation on compensation in the calculation of FAS, and to enter a new decision that grants an exception to the statutory limitation in the calculation of relator's FAS.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE
[1] See January 27, 2003 letter attached as Exhibit A to relator's February 27, 2004 "Motion to Accept Supplemental Stipulation of Evidence." See, also, Record of Proceedings filed by STRS at page 1.
[2] See Record of Proceedings filed by STRS at page 1.
[3] See Record of Proceedings filed by STRS at page 2.
[4] See Record of Proceedings filed by STRS at page 1.
[5] See Record of Proceedings filed by STRS at page 1.
[6] See Exhibit A attached to relator's complaint.