DECISION
{¶ 1} Relator, Distribution Fulfillment Services, Inc. ("DFS"), filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Della Adams. *Page 2 
 {¶ 2} In accord with Loc. R. 12, this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the request for a writ.
 {¶ 3} DFS has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} Della Adams injured her back in 1997. She continued to work until March 1998. She had back surgery in June 1998. Her initial application for PTD compensation was denied in 2002. She filed a second application in 2006, which was granted. The staff hearing officer who authorized the order granting PTD compensation acknowledged that the prior order denying PTD compensation found Della Adams to have failed to pursue appropriate rehabilitation efforts, but found this not to be determinative because Della Adams' physical condition had deteriorated.
 {¶ 5} In this mandamus action, DFS argues that the doctrine of res judicata bars a grant of PTD compensation after the initial denial of the compensation. Counsel for DFS views the initial denial of PTD compensation as a finding that Della Adams' failure to aggressively pursue rehabilitation efforts shortly after her back surgery "destroyed her opportunity to return to work."
 {¶ 6} Counsel for DFS overstates the finding of the initial order denying PTD compensation for Della Adams. That 2002 order stated:
 In summary, the totality of claimant's disability factors, particularly viewed when the claimant was 56 and did not adequately pursue reemployment options, are such that it is *Page 3 
reasonable to conclude that she was potentially employable at age 56 for sedentary employment and on that basis the claimant is not found to be permanently totally disabled.
 {¶ 7} The 2002 order addressed the application of the disability factors to a woman who was found medically capable of sustained remunerative employment. The 2006 order granting PTD compensation was based upon a finding that Della Adams was medically incapable of sustained remunerative employment. The non-medical disability factors were not an issue. Res judicata does not apply to this situation.
 {¶ 8} Stated differently, a denial of PTD compensation based upon disability factors does not work as a permanent denial of PTD compensation for a claimant whose medical condition deteriorated to the point the claimant can no longer work.
 {¶ 9} The first objection, based upon res judicata, is overruled.
 {¶ 10} Because the issues are different, the commission was not reconsidering its 2002 order. The commission was addressing the merits of a second application for PTD compensation based upon a change in circumstances.
 {¶ 11} The second objection, based upon a theory the commission was reconsidering the prior order, is also overruled.
 {¶ 12} We adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the requested writ.
Objections overruled; writ denied.
 PETREE and SADLER, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE`S DECISION IN MANDAMUS {¶ 13} In this original action, relator, Distribution Fulfillment Services, Inc. ("DFS" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") *Page 5 
compensation to respondent Della Adams ("claimant"), and to enter an order denying said compensation.
Findings of Fact: {¶ 14} 1. On October 23, 1997, claimant sustained an industrial injury while employed as a laborer for DFS, a self-insured employer under Ohio's workers' compensation laws. The job involved the packing of items into boxes for shipment. On that date, claimant developed low back pain while pushing a box that had become stuck on an assembly line.
 {¶ 15} 2. The industrial claim is allowed for "low back strain; aggravation of preexisting spinal stenosis at L3-4 L4-5 on the basis of degenerative disc disease," and is assigned claim number 97-608847.
 {¶ 16} 3. On February 5, 2002, claimant filed an application for PTD compensation.
 {¶ 17} 4. Following a July 23, 2002 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order of July 23, 2002, states:
 This order is based particularly upon the report of Dr. Bowden and Mr. Berman.
 The claimant was injured on 10/23/1997. On that date she pushed a stuck box that got jammed on the box line and incurred a low back injury. The claimant had low back surgery on 06/04/1998, otherwise, all treatment has been conservative. The claimant last worked on 03/02/1998.
 Based on the report of Dr. Bowden it is found that the claimant is capable of sedentary work. Furthermore, when considering claimant's disability factors of age, education, and work history in conjunction with the claimant's re-strictions, it is not found that the claimant is or was precluded from sustained renumerative [sic] employment, and is, therefore, *Page 6 
not permanently totally disabled. More specifically, it is found that the claimant did not pursue all reasonable avenues with respect to ret[r]aining/rehabilitation as will be explained below.
 As regard to the disability factors, the claimant has a ninth grade education. This at first glance may be viewed as a negative factor, however, the claimant has indicated per the IC-2 application and per testimony at hearing that she has adequate reading, writing, and math skills.
 In this regard Mr. Berman, in his 05/21/2002 vocational report, stated that claimant's education did not suggest the inability to learn employment entry level skills through on the job training. Consequently, based on this review, claimant's education is not viewed as a negative factor.
 Claimant's present age is 60. However, when the claimant last worked she was 55, and when she was evaluated by the Bureau of Workers' Compensation Rehabilitation Division she was 56. The claimant's age of 56 when she was eval-uated by the Bureau of Workers' Compensation Rehab-ilitation Division is important because the rehabilitation reports at that time indicated the claimant had good trans-ferable skills and had the potential to be employed.
 Specifically, in a 08/31/1998 report Shannon Kitonas, the rehabilitation case manager, stated the claimant could become employed if she learned pain management techniques and coping skills. In a latter 10/13/1998 report Ms. Kitonas stated the claimant was offered job assistance, pain management counseling and skill enhancement in business office tasks, but the claimant refused these services because she felt her pain was too severe to comply with these requests.
 Consequently, at age 56, the Rehabilitation Division opined that the claimant had employment potential and offered her services to help her possibly become employed, but the claimant did not participate in these services because of ongoing pain complaints. It is, therefore, found that at age 56 the claimant did not adequately pursue all reemployment avenues. In that light, at age 56, being that the claimant had potentially nine years left in the work force and had reemployment opportunities, the claimant's age is viewed as a positive factor. In this vein it is noted that pursuant to Bowling v. National Car Corp. (1996) 77 O.St.3d 148, the Commission *Page 7 
demands certain accountability of a claimant, who, despite the time and medical ability to do so, never tried to further his/her education or learn new skills when there was ample opportunity to do so.
 The claimant's work history is as follows: order filler, sewing machine operator, selector, and cashier. These positions are found to be positive factors in that Mr. Berman stated these jobs were all semi-skilled in nature and claimant's work history did not limit her in seeking entry level employment for which the claimant could cognitively and physically perform.
 In summary, the totality of claimant's disability factors, particularly viewed when the claimant was 56 and did not adequately pursue reemployment options, are such that it is reasonable to conclude that she was potentially employable at age 56 for sedentary employment and on that basis the claimant is not found to be permanently totally disabled.
 5. On March 24, 2006, Thomas E. Wanko, D.O., wrote:
 * * * She has had surgical procedures, injections, MRI's and physical therapy procedures since the original injury. Despite all of these interventions she continues to have significant and at times severe back pain. Though it appears that the process is not rapidly progressive, her level of pain seems to be slowly escalating. As a result she takes analgesics on a regular basis. Her lifestyle is significantly compromised because of her chronic refractory pain. It is reasonable to expect that the nature of her symptoms will continue to be present and probably escalate over time necessitating further titration of pain relieving medication. The treatment for the condition itself is likely to cause a degree of com-promise in her mental status that would not allow her to continue to be gainfully employed in the future. For that reason I believe that Della Adams is totally and permanently disabled.
 {¶ 18} 6. On March 31, 2006, citing Dr. Wanko's report, claimant filed another PTD application. *Page 8 
 {¶ 19} 7. In further support of her second[1] PTD application, claimant submitted a report dated August 7, 2006 from Larry T. Todd, Jr., D.O., who is a board certified orthopedic spine surgeon. Dr. Todd's report states:
 I am seeing Della back today in the orthopedic spine clinic. She is now approximately 19 months out from laminectomy and fusion from L3-L5 levels due to spondylolisthesis and spinal stenosis. She presents back today in followup [sic].
 * * *
 RADIOLOGY: AP and lateral lumbar spine x-rays obtained today show the hardware holding in good alignment at L3-L5. IMPRESSION: Spinal stenosis L3-L5, ICD-9 code 724.02, 19 months postop from laminectomy and fusion.
 PLAN: At this time, Della states that she is holding steady, but still is quite uncomfortable regarding her low back whenever she is very active. Unfortunately, she may be at her maximum improvement following her surgery. For this reason, I am in support of her being off work on disability. I would hate to see her take any steps backwards or undo any degree of the improvement that we had seen from her since her fusion. The other changes in her lumbar spine may limit her in the future from any lifting greater than 20 pounds or so. She can walk and do household activities, but I feel that she should avoid more extreme things such as bending, twisting, or heavy lifting. We will see her in our office on a p.r.n. basis. I did have a long discussion with her about specific activity restrictions and also encouraged her to contact us if there were any change for the worse in her condition.
 {¶ 20} 8. Following an October 25, 2006 hearing, an SHO issued an order awarding PTD compensation starting March 24, 2006. The SHO's order of October 25, 2006 states:
 This award is based particularly upon the reports of Drs. Todd and Wanko. *Page 9 
 In support of her application to be awarded permanent total disability compensation, claimant submits the 03/24/2006 report of Dr. Wanko and the 08/07/2006 report of Dr. Todd. Both physicians find the claimant medically unable to en-gage in any form of sustained remunerative employment solely as a result of the allowed conditions in the claim. After review of all the evidence on file and the arguments presented at hearing, the Staff Hearing Officer finds that the conclusion contained in Dr. Todd and Dr. Wanko's reports is well supported, and the Staff Hearing Officer adopts this conclusion. Such a finding mandates an award of permanent and total disability compensation without consideration of the [State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167] factors.
 In evaluating the credibility of the conclusions contained in these two reports, the Staff Hearing Officer notes that examinations submitted by the employer, and obtained on behalf of the Industrial Commission, are not greatly at variance with this conclusion. The other physicians find that the claimant is able to engage in a portion of the range of sedentary activities, or perhaps the entire range of sedentary activities, but no more.
 Additionally, and also in evaluating the credibility of these reports, the Staff Hearing Officer notes the conclusions contained in the vocational evaluator's report from Dr. Osipow dated 07/25/2006. Dr. Osipow also concluded that, even if the conclusions contained in the reports which find the claimant able to engage in sedentary work are accepted, she is still permanently and totally removed from the work force.
 The Staff Hearing Officer has considered the argument raised by employer's counsel with respect to the findings contained in the order of 08/31/2002. By that order, a previous application to be awarded permanent and total disability compensation was denied. In that order the Staff Hearing Officer concluded that the claimant was not eligible for such an award because she had failed to avail herself of opportunities for retraining and rehabilitation at an age which was young enough to benefit from those opportunities. The Staff Hearing Officer does not find that finding to be binding upon this application. Since that finding, the claimant's medical condition has deteriorated. In particular, since that finding, the claimant has undergone a fusion surgery, which *Page 10 
did not result in an improvement in the claimant's capacities, but rather, in a further worsening of those capacities. This worsening of the claimant's medical condition does constitute a change in circumstances making it appropriate to give further consideration, on the merits, to claimant's application for an award of permanent and total disability compensation.
 The start date is established as the date of Dr. Wanko's report.
 {¶ 21} 9. On November 29, 2006, relator moved for reconsideration of the October 25, 2006 SHO's order.
 {¶ 22} 10. On December 29, 2006, the three-member commission mailed an order denying relator's request for reconsideration.
 {¶ 23} 11. On February 28, 2007, relator filed this mandamus action.
Conclusions of Law: {¶ 24} The issue is whether the doctrine of res judicata precluded the commission from granting the second PTD application.
 {¶ 25} Finding that the doctrine did not preclude the commission from granting the second PTD application, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.O'Nesti v. DeBartolo Realty Corp., 113 Ohio St.3d 59, 2007-Ohio-1102, at ¶ 6.
 {¶ 27} Claim preclusion prevents subsequent actions by the same parties or their privies based upon any claim arising out of a transaction that was the subject matter of a previous action. Id. *Page 11 
 {¶ 28} In Fort Frye Teachers Assn., OEA/NEA v. State Emp. RelationsBd. (1998), 81 Ohio St.3d 392, 395, the court had occasion to succinctly summarize the doctrine of issue preclusion:
 The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. Norwood v. McDonald (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three of the syllabus; Trautwein v. Sorgenfrei (1979), 58 Ohio St.2d 493, 12 O.O.3d 403, 391 N.E.2d 326, syllabus; Goodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus. While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437-438, 254 N.E.2d 10, 13. "In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Id. at 112, 49 O.O.2d at 438, 254 N.E.2d at 13.
 {¶ 29} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications.
 {¶ 30} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for adjudication of PTD applications. The guidelines "shall be followed by the adjudicator in the sequential evaluation" of PTD applications. Id.
 {¶ 31} Ohio Adm. Code 4121-3-34(D)(1)(d) states:
 If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself from the work force, the injured *Page 12 
worker shall be found not to be permanently and totally disabled. * * *
 {¶ 32} Ohio Adm. Code 4121-3-34(D)(2)(a) and (b) states:
 If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
 (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. (Vocational factors are defined in paragraph (B) of this rule).
 {¶ 33} In State ex rel. Bowling v. Natl. Can Corp., 77 Ohio St.3d 148,1996-Ohio-200, on the third PTD application filed by Earl Bowling, the commission again denied PTD compensation. In its order, the commission determined that, medically, the allowed conditions restricted Bowling to the performance of light and sedentary work. The commission then analyzed the nonmedical factors. In so doing, the commission found in part:
 * * * He has now had 19 years in which to improve his educational skills and retrain for light or sedentary work. There is no evidence of any attempts to do so. Nor is there *Page 13 
any evidence on file that he lacked the ability to further educate himself or retrain. * * *
Id. at 152.
 {¶ 34} In denying the writ of mandamus, the Bowling court explained:
 We note with interest that claimant's allowed conditions did not remove him from sustained remunerative employment. Claimant was working until the plant closed in 1974. Claimant never worked again, despite the lack of any medical prohibition. Claimant's paucity of treatment suggests that his medical condition has changed little, if any, since that time. This, in turn, implies that the allowed conditions were not work-prohibitive then, nor are they now.
 In the nonmedical analysis that followed, the commission discounted Dr. Riccio's vocational report after finding that his review of claimant's work history was incomplete. This determination was within the commission's prerogative and not an abuse of discretion.
 The commission's independent review of claimant's non-medical factors determined that claimant's age, education, and work history, while not entirely favorable, were not insurmountable barriers to re-employment. The commission stressed the claimant's failure to make any effort to enhance his re-employment prospects.
 The commission — as do we — demands a certain accountability of this claimant, who, despite the time and medical ability to do so, never tried to further his education or to learn new skills. There was certainly ample opportunity. At least fifteen years passed between the plant closure and claimant's application for permanent total disability compensation, and claimant was only age forty-seven when the plant shut down. Under these circumstances, we do not find that the commission's decision constituted an abuse of discretion.
Id. at 153.
 {¶ 35} Some observations are in order here. To begin, while the commission's guidelines for adjudicating PTD applications specifically provide for a determination of *Page 14 
whether the injured worker voluntarily removed himself from the workforce, there is no similar provision in the commission rules for a determination for a failure to enhance reemployment prospects as the sole basis for denial of the PTD application.
 {¶ 36} In Bowling, the commission determined that the claimant had failed to make any effort to enhance his reemployment prospects as part of the commission's nonmedical analysis. The commission, inBowling, did not deny PTD compensation solely because of Bowling's failure to make any effort to enhance his reemployment prospects. Accordingly, the Bowling court's approval of the commission's nonmedical analysis cannot be construed as judicial creation of a separate ground for denial of a PTD application in the sequential evaluation of applications under the commission's rules.
 {¶ 37} In the SHO's order of July 23, 2002, the commission denied the PTD application by making a determination under Ohio Adm. Code 4121-3-34(D)(2)(b), which required the commission to review the nonmedical factors to determine whether the injured worker may return to the job market using past employment skills or those skills that may be reasonably developed. The Bowling decision permits the commission to consider the applicant's failure to seize opportunities for reemployment enhancement in its determination of whether the nonmedical factors permit sustained remunerative employment. That is, the applicant cannot be allowed to rely upon his lack of education or training if it can be shown that he is directly responsible for those deficits.
 {¶ 38} It seems necessary here to state the obvious. Clearly, the SHO's order of July 23, 2002 does not render a determination that claimant voluntarily removed herself from the workforce, a finding that might have been used by the commission to declare *Page 15 
her ineligible for compensation when the subsequent PTD application was filed. Thus, it is inaccurate for relator to claim here that the commission adjudicated claimant ineligible for compensation with respect to future applications when it denied the first PTD application.
 {¶ 39} In the SHO's order of October 25, 2006, the commission awarded PTD compensation based upon a determination pursuant to Ohio Adm. Code 4121-3-34(D)(2)(a), which renders an analysis of the nonmedical factors irrelevant.
 {¶ 40} Thus, even if it can be accepted that the doctrine of issue preclusion gives a binding effect to the commission's prior finding that "claimant did not pursue all reasonable avenues with respect to ret[r]aining/rehabilitation," that finding has no relevance when the commission renders a determination under Ohio Adm. Code 4121-3-34(D)(2)(a).
 {¶ 41} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Claimant also filed a PTD application on February 9, 2005, which she dismissed on August 4, 2005. Because of the dismissal, claimant's PTD application filed March 31, 2006, shall be referred to here as her second PTD application. *Page 1