[Cite as *State ex rel. White v. Internatl. House of Pancakes*, 2014-Ohio-412.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, ex rel. | : | |
| Nancy L. White, Administrator | | |
| of the Estate of Mary H. Parker, | : | |
| Deceased, | | |
| Relator, | : | |
| | | No. 13AP-285 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| International House of Pancakes | : | |
| and Industrial Commission of | | |
| Ohio, | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on February 6, 2014

*Butkovich & Crosthwaite Co., Joseph A. Butkovich* and *Dana R. Lambert,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Nancy L. White, as administrator for the estate of Mary H. Parker, has filed this action in mandamus seeking a writ of mandamus to compel the Industrial Commission of Ohio ("commission") to award permanent total disability ("PTD") compensation to Mary H. Parker ("Parker") posthumously.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate

proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ of mandamus.

{¶ 3} Counsel for Parker's estate has filed an objection to the magistrate's decision. Counsel for the commission has filed a memorandum in response. Counsel for the commission has filed its own objection to the magistrate's decision. The case is now before the court for a full, independent review.

{¶ 4} Parker suffered a back injury in 1974. It was recognized for "acute myofibrositis of the lumbar spine" and "aggravation of pre-existing arthritis of lumbar spine." In April 1999, she underwent back surgery but did not work thereafter.

{¶ 5} In November 2001, Parker applied for PTD compensation. The application was supported by a report from her chiropractor. She was 73 years old when she filed her application.

{¶ 6} In her application, she listed her former employments as being a waitress for many years and four years as a receptionist. For several years she did not work outside the home.

{¶ 7} A report for the commission indicated that Parker had only a ten percent physical impairment and had the physical capacity for sedentary work. A staff hearing officer ("SHO") relied upon the report in denying PTD compensation.

{¶ 8} Counsel for Parker filed a mandamus action which resulted in a limited writ of mandamus. Before the commission could adjudicate the matter again, Parker died. As a result, an SHO entered an order finding the application for PTD compensation to be abated.

{¶ 9} Nancy L. White later filed an application requesting any PTD compensation funds due up to the date of Parker's death. The application indicated Parker's employment as a receptionist had been provided by

Nancy White's brother. The application indicated that the work had not gone well and anyone else would have fired Parker.

{¶ 10} The application for the posthumous award was denied by an SHO based upon a finding that no PTD compensation had accrued as of the date of Parker's death. This finding, in turn, was based upon a finding Parker had not been entitled to PTD compensation as a result of the application's so-called *Stephenson* factors, or nonmedical disability factors. *See State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).

{¶ 11} Our magistrate felt that Parker's death did not abate the PTD claims as to her heirs when she died. The commission has contested this with its objection to the magistrate's decision. We do not sustain the objection but also do not adopt that portion of the magistrate's decision because it does not affect the outcome of this action.

{¶ 12} The remaining issue raised by the estate is whether the commission abused its discretion in its weighing of the so-called *Stephenson* factors when it found that an award of PTD compensation was not warranted. The fact Parker was medically capable of sustained remunerative employment is not contested.

{¶ 13} Parker was 73 years old when she applied for PTD compensation. This was viewed as a negative factor, but not determinative in light of the Supreme Court of Ohio's case of *State ex rel. Moss v. Indus. Comm.*, 75 Ohio St.3d 414 (1996).

{¶ 14} Parker had a high school education, completed in 1945, but below average intellectual skills when measured before her death. The fact she continued in school until she got her high school diploma could be considered an asset.

{¶ 15} Parker's employment was predominantly as a waitress. This indicated people skills and basic skills in math. Parker's work as a receptionist involved some overlapping people skills and additional skills with basic office equipment. The commission did not have to accept Parker's daughter's evaluation of how badly the work was performed.

{¶ 16} We cannot say the commission abused its discretion or that its order was not supported by some evidence. We therefore overrule the remaining objection to the magistrate's decision.

{¶ 17} We therefore adopt the findings of fact and conclusions of law contained in the magistrate's decision except as to the issue of abatement. We deny the request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

BROWN and KLATT, JJ., concur.

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio, ex rel.                        :
Nancy L. White, Administrator
of the Estate of Mary H. Parker,             :
Deceased,
            Relator,                        :
                                           No. 13AP-285
v.                                            :
                                        (REGULAR CALENDAR)
International House of Pancakes               :
and Industrial Commission of
Ohio,                                         :

            Respondents.                    :

                               :

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on October 30, 2013

*Butkovich & Crosthwaite Co., Joseph A. Butkovich* and *Dana R. Lambert,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 18} Mary H. Parker ("decedent") died on June 5, 2009. In this original action, relator, Nancy L. White, the administrator of decedent's estate, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the June 29, 2010 order of its staff hearing officer ("SHO") that denies decedent's November 29, 2001

application for permanent total disability ("PTD") compensation, and to enter an order awarding to Nancy L. White, pursuant to R.C. 4123.60, the amount of compensation that decedent should have received prior to the date of her death.

Findings of Fact:

{¶ 19} 1. On December 12, 1974, decedent injured her lower back while employed as a waitress for respondent International House of Pancakes ("IHOP"), a state-fund employer. The industrial claim (No. 74-41965) is allowed for "acute myofibrositis of lumbar spine; aggravation of pre-existing arthritis of lumbar spine."

{¶ 20} 2. In 1995, decedent began employment as a receptionist, a job she held until April 1999.

{¶ 21} 3. In April 1999, decedent underwent back surgery. She did not return to any type of employment subsequent to her back surgery.

{¶ 22} 4. On October 22, 2001, at her own request, decedent was examined by chiropractor Peter J. Fagerland, D.C. In his two-page narrative report, Dr. Fagerland opined:

Based on the allowed conditions and the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, I find the following: it is my professional opinion that based on the patient's subjective complaints of pain, discomfort, and muscle weakness, in addition to my objective findings of muscle spasm, decreased range of motion, loss of muscle strength, and positive orthopaedic [sic] findings the patient is permanently and totally disabled and is unable to perform any type of remunerative employment whatsoever.

{¶ 23} 5. On November 29, 2001, decedent filed an application for PTD compensation. She was 73 years of age at the time. In support, she submitted the October 22, 2001 report of Dr. Fagerland.

{¶ 24} 6. The PTD application form asks the applicant to provide information related to the applicant's education. On her application, decedent indicated that she graduated from high school in 1945. The application form posed three questions: (1) "Can you read?" (2) "Can you

write?" and (3) "Can you do basic math?" Given a choice of "Yes," "No," and "Not well," decedent selected the "Yes" response to all three queries.

{¶ 25} 7. The PTD application form also asks the applicant to provide information regarding her work history. Decedent indicated that she has held three jobs. She was employed as a receptionist at "Packosonic" from 1995 to 1999. She was employed as a "[w]aitress" for "IHOP" from 1972 to 1974. She was employed as a "[w]aitress" at "LaRosa's" and that employment ended in 1983.

{¶ 26} 8. The PTD application form asks decedent to provide additional information about the duties of the jobs she identified. The form poses six questions regarding each job. Regarding the receptionist job, the six questions and decedent's responses were as follows:

[One] Your basic duties: Answering phones, copying, faxing, typing and payroll.

[Two] Machines, tools, equipment you used: Type writer, fax machine and multi-line phone.

[Three] Exact operations you performed: Recorded employee's payroll, answered phone calls and take messages.

[Four] Technical knowledge and skills you used: Used math and English skills, knowledge of typewriter and fax machine.

[Five] Reading/Writing you did: Wrote down payroll times and signed checks and took messages.

[Six] Number of people you supervised: None.

{¶ 27} 9. Regarding the waitress job at IHOP, the six questions and decedent's responses were as follows:

[One] Your basic duties: Waited on people and bused the tables, bring checks to register to pay bill.

[Two] Machines, tools, equipment you used: Cash register.

[Three] Exact operations you performed: See answer to #1.

[Four] Technical knowledge and skills you used: Math to write up checks.

[Five] Reading/Writing you did: Write the order down.

[Six] Number of people you supervised: None.

{¶ 28} 10. On February 19, 2002, at the commission's request, decedent was examined by James T. Lutz, M.D. In his two-page narrative report, Dr. Lutz wrote:

**HISTORY OF PRESENT ILLNESS**: Mary Parker is a 73-year-old female who was injured on 12/12/74 while working as a waitress. On the date of injury the claimant was carrying food and slipped on a toothpick on the floor and twisted her low back trying not to fall. The claimant underwent one surgical procedure related to this injury, which occurred in April 1999, and most likely consisted of a laminectomy discectomy, as the claimant states that she underwent no surgical fusion. Currently the claimant is under the care of a pain management specialist, Dr. Alturi, whom she sees every three months. Her current medications related to the injury include Vicodin, Ultram and Celebrex. The claimant also takes Flexeril prescribed by her primary care physician. Her current symptoms include constant low back pain, which varies in severity with constant radiation of pain to the right knee, and occasional radiation of pain to the right ankle. The claimant denies any associated numbness or tingling. She states her low back symptoms are aggravated with all types of exertional activities such as lifting and bending, prolonged sitting and standing, and with weather changes.

Regarding her activities of daily living: The claimant lives with her husband in their own home. She does some light cooking, and gets assistance making the bed from her husband. The claimant will also load some of the dishes into the dishwasher. The claimant states she seldom accompanies her husband to the grocery store, and spends a fair amount of time sitting and watching TV. She also goes for brief walks with her husband.

**PAST MEDICAL HISTORY**: The claimant denies any history involving her low back prior to the injury of record. She underwent a cholecystectomy in the mid-1980's, and left knee surgery in the mid-1990's. The claimant has a history of diabetes type 2, for which she takes Glucotrol; a history of

ulcer disease, for which she takes Nexium and Reglan; and a history of blood clots of her left leg, for which she takes Coumadin. She also has a history of hypertension, for which she takes Zestoretic.

* * *

**DISCUSSION**: Mary Parker sustained an industrial injury on 12/12/74 whose claim allowances are noted above. She has undergone one surgical procedure related to this injury, presumably consisting of a laminectomy discectomy. Other disability factors include the claimant's age of 73, her last date of work being in 1999, and a twelfth grade education.

**ANSWERS TO SPECIFIC QUESTIONS**:

[One] In my medical opinion, this claimant has reached maximum medical improvement with regard to each specified allowed condition of the injury of record. In my opinion, no fundamental, functional or physiologic change can be expected despite continued treatment and/or rehabilitation.

[Two] Reference is made to the Fourth Edition of the AMA Guides Revised in arriving at the following impairment assessment. For injuries to the lumbosacral spine including acute myofibrositis of lumbar spine, and aggravation of preexisting arthritis of lumbar spine: Utilizing table 72 on page 110 the claimant warrants a DRE category III, which equals a 10% whole person impairment.

[Three] Please see the enclosed physical strength rating.

{¶ 29} 11. On a Physical Strength Rating form dated February 19, 2002, Dr. Lutz indicated by his mark that decedent is capable of "sedentary work."

{¶ 30} 12. On March 7, 2002, at decedent's own request, she was examined and tested by psychologist and vocational expert Jennifer J. Stoeckel, Ph.D.  In her six-page narrative report, dated March 26, 2002, Dr. Stoeckel wrote:

**TEST RESULTS**

On the Wechsler Adult Intelligence Scale-III, Ms. Parker obtained Verbal, Performance, and Full Scale IQ scores of 85, 78, and 80, respectively. These scores place Ms. Parker at the low average range for intellectual functioning and at the 9th percentile. Intellectually, Ms. Parker is surpassed by 91% of the normative population. She was weaker on visual spatial skills although these skills tend to diminish as a factor of age. She showed strength for digit recall. On the Verbal Subtest she was weak on verbal reasoning ability. Normally, individuals who score at this range are able to complete a high school education although may have some academic difficulties. Within the labor force they are typically employed in unskilled to low semi-skilled work activity.

* * *

On the Wide Range Achievement Test---III, Ms. Parker scored at the high school level for reading and spelling and at the 7th grade level for arithmetic.

* * *

The Career Ability Placement Survey assesses eight abilities important for success in a variety of work fields. Scores are reported as stanines which range from 1 to 9 with stanines of 1, 2, and 3 being considered below average; 4, 5, and 6 as average; and 7, 8, and 9 as [above] average. On this measure, Ms. Parker demonstrated average ability for mechanical reasoning; yet below average functioning in all remaining work aptitudes measured including spatial reasoning, verbal reasoning, numerical ability, language usage/grammar, word knowledge, perceptual speed and accuracy, and manual speed and dexterity.

* * *

**OPINION**

Based upon the results of my examination and the information provided/reviewed, without reservation, Ms. Parker would be considered permanently and totally disabled on the basis of her work injury, residual impairment and vocational characteristics. Again, Ms. Parker is a seventy-three year old female who suffered a work related injury in

1974. She was treated conservatively until 1999 when she underwent a decompressive lumbar procedure. She has not worked substantially since that time. Dr. Fagerland who evaluated Ms. Parker in October of 2001 has indicated she would be considered permanently and totally disabled based upon physical findings. She was evaluated by Dr. Berghausen apparently at the request of the Bureau of Workers' Compensation. He also found Ms. Parker disabled from work activity given her low back condition and age characteristics. She was evaluated by Dr. Lutz recently for the Industrial Commission. He opined sedentary capacities.

It is noteworthy Ms. Parker post-injury found sedentary employment as a receptionist such as answering phones, copying, faxing, light typing and doing payroll. Unfortunately, following the surgery in 1999 she has been unable to return to any gainful employment. She cannot sit for extended periods of time. Additionally, while she has a history of high school education and high school level reading and math skills her math skills are limited to 7th grade and per vocational testing Ms. Parker demonstrates predominantly below average work aptitudes. Ms. Parker is significantly more limited by her age characteristics. At seventy-three Ms. Parker would be considered a person of advanced age per Industrial Commission criteria. Her age alone would preclude her ability to acquire new work skills as well as her ability to compete successfully with younger entry level workers.

Summarily, within reasonable vocational certainty, Ms. Parker would be considered permanently and totally disabled on the basis of her allowed conditions, significant residual impairment, her significantly advanced age of seventy-three years, departure from the work force in 1999, and vocational characteristics such as low average intellectual functioning and predominantly below average work aptitudes.

{¶ 31} 13. The commission requested an "Employability Assessment Report" from vocational expert Anthony Stead. In his four-page narrative report, dated March 25, 2002, Stead answers several questions found under the caption "III. Effects of Other Employability Factors:"

**[One] Question:**
How, if at all, do the claimant's age, education, work history or other factors (physical psychological and sociological)

affect his/her ability to meet basic demands of entry-level occupations?

**Answer:**
Age: 73. At this age, it could be more difficult to learn new skills and adapt to new environments. I would consider her age a negative factor when considering re-employment.

**Education:** 12th grade. This level of education should be sufficient for entry-level unskilled and semi-skilled tasks. I would not consider her education to be a barrier to re-employment.

**Work History:** The claimant's work history was that of a Receptionist and Waitress. The claimant's work history allowed her to deal with the public. I would not consider her work history to be a barrier to re-employment.

**[Two] Question:**
Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry-level Sedentary or Light jobs?

**Answer:**
There is nothing to indicate that the claimant could not benefit from a structured vocational rehabilitation program designed at skill enhancement and re-employment. The claimant's advanced age, however, would likely minimize the positive practical effects such programming would have.

**[Three] Question:**
Are there significant issues regarding potential employability limitations or strengths that you wish to call to the SHO's attention?

**Answer:** None.

{¶ 32} 14. Following a January 6, 2003 hearing, an SHO issued an order denying decedent's PTD application. For the determination of residual functional capacity, the SHO relied exclusively on the reports of Dr. Lutz. The SHO found that decedent's "orthopedic condition is permanent and has reached maximum medical improvement and results in a 10% whole person impairment rating."

{¶ 33} The SHO further explained:

> The Staff Hearing Officer finds that the injured worker would be able to engage in sedentary work activity based upon the examination report of Dr. Lutz dated 2/19/02.
>
> The Staff Hearing Officer finds that the injured worker's past work history as a receptionist was a sedentary position which required the injured worker to answer phones as well as fax and copy paperwork. The job also required the injured worker to type and take messages and record employee's payroll. This job did not require the injured worker to lift over 10 pounds and involved sitting most of the time at a desk. The Staff Hearing Officer finds that this position fits within the restrictions noted by Dr. Lutz as outlined in his 2/19/02 report.
>
> Therefore, the Staff Hearing Officer finds that the injured worker is medically able to return to her former position of employment and therefore is precluded from receiving Permanent Total Disability benefits, pursuant to OAC 4121-3-34(D)(1)(c).

15. In February 2008, decedent filed in this court a mandamus action challenging the SHO's order of January 6, 2003. On December 4, 2008, this court issued its decision granting the writ of mandamus in part and remanding the matter to the commission for further proceedings on the issue of whether decedent is entitled to the requested compensation. State ex rel. Parker v. Internatl. House of Pancakes, 10th Dist. No. 08AP-85, 2008-Ohio-6317. In Parker, this court found that the commission misconstrued Ohio Adm.Code 4121-3-34(D)(1)(c) which states:

> If, after hearing, the adjudicator finds that the injured worker is medically able to return to the former position of employment, the injured worker shall be found not to be permanently and totally disabled.

Id. at ¶ 6.

This court determined that the SHO's order of January 6, 2003 incorrectly assumed that the receptionist job was the former position of employment within the meaning of Ohio Adm.Code 4121-3-34(D)(1)(c). The SHO failed to recognized that the former position of employment was the job decedent held on the date of her industrial injury. Given the misapplication of Ohio Adm.Code 4121-3-34(D)(1)(c), the SHO's order

of January 6, 2003 fails to address the non-medical factors necessitated by the conclusion that decedent was unable to return to her former position of employment as a waitress.

{¶ 34} 16. On February 19, 2009, the SHO mailed an order recognizing this court's writ. The SHO's order explains:

Pursuant to the Judgment Entry of the Tenth Appellate District Court of Appeals dated 12/04/2008, which was filed with the Industrial Commission on 02/12/2009, for the case of State ex rel. Mary Parker v. Industrial Commission, assigned Case No. 08AP0085, it is found that the requested Writ of mandamus has been granted.

Therefore, it is the order of the Industrial Commission that the previous order dated January 6, 2003, findings mailed January 23, 2003, which denied the application for permanent total disability compensation, be vacated; and a new order be issued, as so instructed by the court.

Accordingly, this claim is to be referred to the Hearing Administrator for appropriate review and to schedule a hearing on the issue of the injured worker's Application for Permanent and Total Disability filed on November 29, 2001.

The hearing officer is to issue an order consistent with the decision of the court and its magistrate.

{¶ 35} 17. Pursuant to the February 19, 2009 SHO's order, the PTD application was scheduled for hearing on July 9, 2009. However, at the hearing counsel indicated that Mary Parker had died on June 5, 2009. Consequently, the SHO's order of July 9, 2009 does not adjudicate the PTD application. Rather, the SHO's order of July 9, 2009 states:

The Hearing Officer finds that the claim is abated by her death. The Hearing Officer orders that the file be referred to the Bureau of Workers' Compensation[.]

{¶ 36} 18. On July 8, 2009, decedent's daughter, Nancy L. White, completed form C-6 captioned "Application For Payment Of Compensation Accrued At Time Of Death." On the form, Mary Parker is named as the decedent and "N. Lynette White" is named as the applicant. (Presumably, "N. Lynette White is Nancy L. White.") "N. Lynette White" is also listed as

the only dependent in the space provided under the following preprinted statement:

Application for payment of compensation accrued and due decedent at the time of death, or compensation for which the decedent would have been otherwise entitled to have made application is hereby made on behalf of the following named persons, who were dependent upon the decedent for support[.]

{¶ 37} 19. On the C-6 form, the applicant requests PTD compensation from October 22, 2001 through June 5, 2009. The completed C-6 form was not filed until February 1, 2010.

{¶ 38} 20. On October 8, 2009, Nancy L. White executed an affidavit, stating:

**I, Nancy L. White**, having been first duly sworn, state the following: I am the daughter of Mary H. Parker, deceased, with regard to her Ohio Workers' Compensation claim assigned claim number 74-41965.

Following my mother's employment with the employer of record, International House of Pancakes, she worked various jobs as a waitress. Her longest period of employment, as a waitress, was for The Hitching Post on Beechmont Avenue, in the Anderson Township area.

Following her employment with The Hitching [P]ost, she worked for some time at LaRosa's, also in the Anderson Township area.

As my mother's health declined she began working for my brother at Crowley Label, later known as Packosonic Label. This is a printing company. My mother performed general clerical duties, such as a secretary or receptionist.

My mother's health problems proved to be a problem for her to complete her job duties. She was in constant pain, had to take a lot of pain medication and was unable to get around easily. She could not sit for long periods of time, but then she also had problems walking due to the pain in her legs.

The pain medications that my mother took also caused her confusion. She was constantly making mistakes that had to be

corrected by someone else. Phone messages/orders had to be verified for accuracy if they were taken by my mother. Someone had to go back after my mother performed most of her duties to correct her mistakes. Most of what she did had to be redone.

Attendance at work was also an issue due to my mother's poor health. She also missed work for ongoing medical appointments.

It is my opinion that no other employer would have kept my mother as an employee due to her poor health, absenteeism, physical restrictions, or inability to produce high quality work. Because this was a family business, my mother was able to work and earn money.

{¶ 39} 21. The record contains a January 6, 2010 entry of the Probate Court of Clermont County, Ohio, appointing "Nancy Lynette White" executor of the estate of Mary Helen Parker who was stated to have died on June 5, 2009.

{¶ 40} 22. On June 29, 2010, an SHO heard the C-6 application filed by Nancy L. White. Following the hearing, the SHO issued an order denying the C-6 application. The SHO's order explains

It is the order of the Staff Hearing Officer that the C-6 Application for Payment of Compensation Accrued At Time Of Death, filed on 02/01/2010, is denied.

In the application, Ms. N. Lynette White, as the administrator of the estate of Mary Parker, requested permanent and total disability compensation accrued and owed to Ms. Parker as of the date of her death on 06/05/2009.

It is the finding of the Staff Hearing Officer that no permanent and total disability compensation was accrued and owed to Ms. Mary Parker at the time of her death.

Ms. Parker had previously filed and requested the payment of permanent and total disability compensation pursuant to a IC-2 application filed on 11/29/2001. The Industrial Commission of Ohio previously denied the application pursuant to a Staff Hearing Officer order issued on 01/23/2003. However, the Staff Hearing Officer order issued

on 01/23/2003 was vacated pursuant to an Industrial Commission order issued on 02/19/2009.

It is the finding of this Staff Hearing Officer that Ms. Parker was not permanently and totally disabled and that her IC-2 application for permanent and total disability compensation, filed on 11/29/2001, is denied.

It is the finding of the Staff Hearing Officer that the claim was previously allowed for the conditions of: ACUTE MYOFIBROSITIS OF LUMBAR SPINE; AGGRAVATION OF PRE-EXISTING ARTHRITIS OF LUMBAR SPINE. The claim was previously disallowed for the conditions of FAILED BACK SURGERY; FAILED BACK SYNDROME.

It is the finding of the Staff Hearing Officer that the Injured Worker was previously examined on behalf of the Industrial Commission of Ohio by Dr. Lutz on 02/19/2002. Dr. Lutz noted that the Injured Worker had reached maximum medical improvement for the allowed conditions in the claim. He also opined that the Injured Worker was capable of performing sedentary work.

Based upon the report of Dr. Lutz, it is the finding of this Staff Hearing Officer that the Injured Worker had reached maximum medical improvement for the allowed conditions in the claim and was capable of performing sedentary work activities.

It is the finding of the Staff Hearing Officer that the Injured Worker's past work history included jobs as a receptionist, a waitress and as an office clerk. It is the finding of the Staff Hearing Officer that the Injured Worker was working as a receptionist, which is a sedentary level position, up to April of 1999. It is the finding of the Staff Hearing Officer that the Injured Worker had a twelfth grade education and was approximately 73 years of age when she filed the IC-2 application.

It is the finding of the Staff Hearing Officer that the Injured Worker's age was a detriment to her ability to return to and find employment in a sedentary level position. However, this detriment in and of itself is not sufficient to find an Injured Worker permanently and totally disabled. Further, the Injured Worker worked for several years and was previously able to find employment regardless of her advanced age. The

Injured Worker's level of education would be a benefit to her ability to find employment in the sedentary work environment. Further, the Injured Worker's prior work experience establishes that she was capable of performing work in a sedentary level position and had transferable skills in operating cash registers, answering phones, using copiers, typing and using various payroll/office equipment. These skills would have greatly benefited her ability to find employment in a sedentary position.

Considering the Injured Worker's [*State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987)] factors, it is the finding of the Staff Hearing Officer that the Injured Worker would have been capable of returning to and performing sedentary work activities after April of 1999, and thus was not permanently and totally disabled.

Therefore, it is hereby the order of the Staff Hearing Officer that the request for payment of accrued permanent and total disability compensation is denied.

{¶ 41} 23. On April 4, 2013, relator, Nancy L. White, the administrator of decedent's estate, filed this mandamus action.

<u>Conclusions of Law</u>:

{¶ 42} Two issues are presented: (1) whether, pursuant to R.C. 4123.60, the decedent's estate can collect the PTD compensation that decedent allegedly should have received prior to the date of her death even though decedent's industrial claim abated as of the date of her death, and (2) whether the SHO's order of June 29, 2010 presents an abuse of commission discretion in the consideration of the non-medical factors.

{¶ 43} The magistrate finds: (1) the decedent's estate can collect the PTD compensation that decedent allegedly should have received prior to the date of her death notwithstanding that decedent's industrial claim abated as of the date of her death, and (2) the SHO's order of June 29, 2010 does not present an abuse of discretion in the commission's consideration of the non-medical factors.

{¶ 44} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

{¶ 45} R.C. 4123.60 currently provides:

In all cases of death where the dependents are a surviving spouse and one or more children, it is sufficient for the surviving spouse to apply to the administrator on behalf of the spouse and minor children. In cases where all the dependents are minors, a guardian or next friend of such minor dependents shall apply.

In all cases where an award had been made on account of temporary, or permanent partial, or total disability, in which there remains an unpaid balance, representing payments accrued and due to the decedent at the time of his death, the administrator may, after satisfactory proof has been made warranting such action, award or pay any unpaid balance of such award to such of the dependents of the decedent, or for services rendered on account of the last illness or death of such decedent, as the administrator determines in accordance with the circumstances in each such case. If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent, or for services rendered on account of the last illness or death of such decedent, as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made in the manner required by this chapter, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person.

{¶ 46} In *State ex rel. Nicholson v. Copperweld Steel Co.,* 77 Ohio St.3d 193 (1996), Marian Nicholson was the spouse of Charles Nicholson who sustained industrial injuries in 1973 and 1974. In July 1990, Charles applied for PTD compensation. On February 18, 1992, Charles died before any disposition of his PTD application.

{¶ 47} In April 1992, Marian applied, as Charles' dependent, for the compensation that Charles could have received prior to his death. The commission denied Marian's application, finding that Charles' disability was due to non-allowed conditions. Marian then filed a mandamus action in this court arguing that Charles should have received PTD compensation prior to his death and that she, as his dependent, was entitled to the award. This court denied the writ on grounds that Charles' claim had abated upon his death and that Marian had no legal right under R.C. 4123.60 to pursue payment for Charles' PTD compensation by an action in mandamus. Marian then appealed as of right to the Supreme Court of Ohio.

{¶ 48} The *Nicholson* court held that R.C. 4123.60 affords dependents, upon timely application, the right to claim compensation for which a decedent was eligible but was not paid before death and that mandamus is available to enforce the right. *Id.* at 195. The *Nicholson* court explained:

The court of appeals concluded that Charles's PTD claim abated upon his death, which is true under *State ex rel. Hamlin v. Indus. Comm.* (1993), 68 Ohio St.3d 21, 22, 623 N.E.2d 35, 36. The court further held that his surviving spouse had no right under R.C. 4123.60 to "step into * * * [his] shoes" for the purpose of pursuing his claim, and this is also true. *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379, paragraph three of the syllabus (where deceased claimant was paid lump-sum advance for anticipated future compensation, advance was not "accrued compensation" to which dependents may be entitled under R.C. 4123.60, and a surviving spouse cannot pursue the decedent's claim for the advance). The commission urges us to affirm for the same reasons.

We, however, read the emphasized language of R.C. 4123.60 to expressly authorize a deceased worker's dependents' receipt of compensation for which the worker qualified and should have received before death. Indeed, we have already said that where a deceased worker's dependents' claims accrued compensation under R.C. 4123.60, "[t]he award is not personal to the worker because R.C. 4123.60 specifically provides that dependents may recover the compensation the

deceased worker was entitled to receive." *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 177, 2 OBR 715, 719, 443 N.E.2d 962, 966, fn. 5. For this reason, an R.C. 4123.60 award is similar to a death benefit award under R.C. 4123.59-both exist separate and apart from the rights of the injured worker. (Citations omitted.)

Thus, contrary to the court of appeals' decision, Marian is not attempting to pursue Charles's PTD claim, which he filed pursuant to R.C. 4123.58, on his behalf. Rather, when Marian filed her application for accrued compensation, she instituted her own claim for compensation Charles could have received, a claim that is expressly sanctioned by R.C. 4123.60. As a result, Marian's claim was not abated by Charles's death-her interests actually arose at that time and, under R.C. 4123.60, they became independently actionable.

*Id.* at 196.

{¶ 49} The *Nicholson* court went on to find that the commission had abused its discretion in denying Charles' PTD application. Accordingly, the *Nicholson* court reversed the judgment of this court and issued a limited writ returning the cause to the commission for further proceedings.

{¶ 50} In *State ex rel. Liposchak v. Indus. Comm.,* 90 Ohio St.3d 276 (2000), Robert E. Liposchak contracted an occupational disease in the course of his employment. Robert applied for PTD compensation and obtained an award following mandamus litigation. However, Robert died before payment. Robert's brother, Walter Liposchak, became the executor of Robert's estate. Robert's mother, Edith Liposchak, filed a death claim under R.C. 4123.59.

{¶ 51} Edith and Walter together filed a claim under R.C. 4123.60.

{¶ 52} The commission granted payment for medical and funeral expenses pursuant to R.C. 4123.66, but denied all other relief. The commission determined that Edith had never been Robert's dependent, nor was she likely to ever become Robert's dependent. Robert had no lineal decedents, lived with his brother, and was "quite dependent on his brother." *Id.* at 277.

{¶ 53} Edith and Walter filed in this court a mandamus action seeking relief under R.C. 4123.60. Walter sought relief in his capacity as executor of Robert's estate. This court dismissed the Liposchak complaint for failure to state a claim for relief, finding that Edith had an adequate remedy in the ordinary course of law and that Walter had no legal right to relief.

{¶ 54} Before filing their mandamus action in this court, the Liposchak's appealed the commission's order to the Jefferson County Court of Common Pleas.

{¶ 55} On appeal as of right from this court to the Supreme Court of Ohio, the *Liposchak* court held that commission determinations under R.C. 4123.59 or R.C. 4123.60 are not appealable to a common pleas court. That is, such commission determinations are actionable only in mandamus.

{¶ 56} Lastly, the *Liposchak* court addressed the R.C. 4123.60 claim of Walter Liposchak as executor of Robert's estate:

Having found that R.C. 4123.60 dependency issues are not appealable under R.C. 4123.512, we turn to whether Robert's estate can collect the permanent partial and permanent total disability compensation that accrued but had not been paid to him before his death.

In *State ex rel. Nossal v. Terex Div. of I.B.H.* (1999), 86 Ohio St.3d 175, 712 N.E.2d 747, syllabus, we held that the estates of deceased dependents can recover R.C. 4123.60 compensation to which the dependent was entitled from the State Insurance Fund. Thus, Walter, as executor of Robert's estate, reasonably asks why estates of workers should not be able to collect accrued compensation when the estates of dependents are able to collect. We see no reason for such an inequity. Accordingly, we follow *Nossal,* and hold that Robert's estate is entitled under R.C. 4123.60 to compensation that accrued to Robert, but had not been paid to him at the time of his death.

*Id.* at 282.

{¶ 57} The *Liposchak* court reversed the judgment of this court and remanded the cause to this court for further proceedings.

{¶ 58} It is perhaps noteworthy that the *Liposchak* court split five to two. The two dissenting justices concurred as follows:

I must also respectfully dissent from the majority's reliance on our *Nossal* case, in the second part of its opinion, to justify its holding that Robert's estate may recover Robert's accrued but unpaid compensation under R.C. 4123.60. Our *Nossal* syllabus provides only that "*[w]here the commission awards death benefits to the surviving spouse of a deceased employee,* but the spouse dies *before the funds are disbursed,* accrued benefits *for the period between the deceased employee's death and the spouse's death* shall be paid to the spouse's estate." (Emphasis added.) *State ex rel. Nossal v. Terex Div. of I.B.H.* (1999), 86 Ohio St.3d 175, 712 N.E.2d 747, syllabus. In *Nossal,* the worker's sole dependent *had actually been awarded* $298 per week in benefits, but died before those funds were disbursed. Because the award had already vested in the worker's dependent, we permitted the dependent's estate to recover the benefits that the dependent would have received-but for administrative delays-during the limited period between the worker's death and her own. *Nossal* thus only permits a dependent's estate to recover where an award to the worker's dependent has actually vested in that dependent prior to the dependent's death. *Nossal* does not support the majority's much broader holding that a worker's estate can actually collect accrued/unpaid benefits itself under R.C. 4123.60.

Here, unlike the situation we confronted in *Nossal,* no dependent of Robert has been deemed eligible to receive accrued/unpaid benefits. No R.C. 4123.60 award has vested yet been administratively delayed. Moreover, any right to the receipt of accrued/unpaid benefits under R.C. 4123.60 is the right of a "dependent," and Robert's estate cannot itself qualify as a "dependent" under R.C. 4123.60. Dependents are "person[s]" such as surviving spouses and children who either partly, wholly, or prospectively relied on the deceased worker for maintenance and support. See R.C. 4123.59 (C) and (D). A deceased worker's estate is no such "person." A deceased worker's estate is an aggregate comprising the assets and liabilities of the decedent. See Black's Law Dictionary (7 Ed.1999) 567. *Individual beneficiaries* of a deceased worker's estate could seek to recover accrued/unpaid benefits as dependents, upon satisfactory proof to the administrator of their status as dependents under R.C. 4123.60. But a worker's *estate* cannot be said to have relied on the worker for

maintenance and support-even prospectively-for the estate does not even exist as a legal construct until the worker is deceased. We have recognized this distinction before. Seventy years ago, this court held that a dependent (or personal representative thereof) could maintain an action for the unpaid balance of an award, but "not * * * the administrator of the decedent." *Bozzelli v. Indus. Comm.* (1930), 122 Ohio St. 201, 207, 171 N.E. 108, 110.

(Emphasis sic.) *Id.* at 284-85. (Moyer, C.J., and Cook, J., concur in part and dissent in part.)

{¶ 59} Here, the commission suggests that the SHO's order of June 29, 2010 denies relator's C-6 application on two separate grounds: (1) that the commission lacked jurisdiction over the claim for R.C. 4123.60 relief because decedent's industrial claim abated at the time of decedent's death, and (2) the decedent was never permanently and totally disabled.

### First Issue: Claim Abatement

{¶ 60} Ohio Adm.Code 4123-5-21(A) provides:

When a claimant dies, action on any application filed by the claimant, and pending before the bureau or the industrial commission at the time of his death, is abated by claimant's death.

{¶ 61} Primarily relying upon the commission's rule regarding claim abatement, the commission asserts that, because decedent's industrial claim abated at her death, "the commission had no further jurisdiction to hear the matter." (Commission's brief, at 9.)

{¶ 62} According to the commission (Commission's brief, at 6.), the following portion of the SHO's order of June 29, 2010 indicates that claim abatement was one of two reasons for denial of the C-6 application:

It is the finding of the Staff Hearing Officer that no permanent and total disability compensation was accrued and owed to Ms. Mary Parker at the time of her death.

{¶ 63} The magistrate disagrees with the commission's interpretation of the SHO's order of June 29, 2010. The order does not mention abatement or any jurisdictional issue. The portion of the order

relied upon here appears to present a finding or conclusion that is consistent with the commission's determination that decedent was not permanently and totally disabled.

{¶ 64} In any event, the commission's position, i.e., that it lacks jurisdiction over the C-6 because decedent's industrial claim had abated, lacks merit.

{¶ 65} The decision of the *Nicholson* court is instructive. Undeniably, decedent's industrial claim abated at her death on June 5, 2009. However, the C-6 claim of relator did not abate. In fact, it arose at the time of decedent's death, and under R.C. 4123.60 became independently actionable. *Nicholson* at 196.

{¶ 66} Based on the foregoing analysis, the magistrate concludes that decedent's estate can collect the PTD compensation that decedent allegedly should have received prior to the date of her death, notwithstanding the abatement of decedent's industrial claim. This is so under the *Liposchak* decision even though decedent apparently had no dependents.

### Second Issue: The Non-Medical Factors

{¶ 67} As earlier noted, the second issue is whether the SHO's order of June 29, 2010 presents an abuse of discretion in the consideration of the non-medical factors. To begin, the order relies exclusively on the reports of Dr. Lutz for the determination of residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4). Based on Dr. Lutz's reports, the commission determined that the industrial injury permitted sedentary work. Here, relator does not challenge the commission's reliance upon the reports of Dr. Lutz, nor does relator challenge the commission's determination that decedent's residual functional capacity was at the sedentary level. However, relator does challenge the commission's consideration of the non-medical factors.

{¶ 68} Analysis continues with the observation that the commission's order at issue does not address or mention the vocational reports of Dr. Stoeckel or Mr. Stead, nor does the order address or mention the affidavit of

Nancy L. White. Clearly, the commission did not rely on the vocational reports of Dr. Stoeckel or Mr. Stead, nor did it rely upon the White affidavit. Moreover, the commission was not required to address or mention the reports of Dr. Stoeckel and Mr. Stead, or the White affidavit, nor was the commission required to explain why it apparently rejected that evidence. *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250-52 (1996).

{¶ 69} Notwithstanding the commission's rejection of that evidence, relator argues here as if the evidence was relied upon or should have been relied upon by the commission. Relator's discussion or presentation of decedent's non-medical factors inappropriately weaves relator's view of decedent's age, education and work history into the factual scenario.

{¶ 70} For example, in her brief, relator asserts:

The only reason she was able to find work as a receptionist after her industrial injury was because her family owned a business and was trying to accommodate her needs.

(Relator's brief, at 20-21.) As another example, in her brief, relator asserts:

[T]he vocational testing performed by Dr. Stoeckel and Mr. Stead contradict the notion that Ms. Parker was functioning at a high school graduate level at the time she applied for PTD benefits.

(Relator's brief, at 23.)

{¶ 71} In effect, relator's argument for a writ of mandamus is but an invitation that this court reweigh the evidence before the commission. In mandamus, this court ordinarily does not reweigh the evidence before the commission. Obviously, this court cannot accept as fact Nancy White's view of her mother's performance at the receptionist job as indicated in her affidavit. This court cannot accept relator's proposition that decedent's high school education is lessened by the vocational testing by Dr. Stoeckel.

{¶ 72} In consideration of the non-medical factors, the commission is required to address age, education, and work history. *See* Ohio Adm.Code 4121-3-34(B)(3). The commission appropriately addressed those three vocational factors in its order.

## Age

{¶ 73}   On the date of the initial adjudication of her PTD application, decedent was 73 years of age.  In its June 29, 2010 order, the commission finds:

Injured Worker's age was a detriment to her ability to return to and find employment in a sedentary level position. However, this detriment in and of itself is not sufficient to find an Injured Worker permanently and totally disabled

{¶ 74}   Ohio Adm.Code 4121-3-34(B)(3)(a) provides:

"Age" shall be determined at time of the adjudication of the application for permanent and total disability. In general, age refers to one's chronological age and the extent to which one's age affects the ability to adapt to a new work situation and to do work in competition with others.

{¶ 75}   In *State ex rel. Moss v. Indus. Comm.*, 75 Ohio St.3d 414 (1996), the commission denied PTD compensation to a 78 year old applicant with an eighth grade education and an ability to read, write, and do basic math.  The claimant had worked as a housekeeper.  The *Moss* court stated:

Our analysis of the commission's order reveals *Noll* compliance. In so holding, we recognize the significant impediment that claimant's age presents to her reemployment. Workers' compensation benefits, however, were never intended to compensate claimants for simply growing old.

Age must instead be considered on a case-by-case basis. To effectively do so, the commission must deem any presumptions about age rebuttable. Equally important, age must never be viewed in isolation. A college degree, for example, can do much to ameliorate the effects of advanced age.

[*State ex rel. Pass v. C.S.T. Extraction Co.,* 74 Ohio St.3d 373 (1996)], [*State ex rel. DeZarn v. Indus. Comm.*, 74 Ohio St.3d 461 (1996)] and [*State ex rel. Bryant v. Indus. Comm.*, 74 Ohio St.3d 458 (1996)] support these propositions. Collectively, these cases establish that there is not an age-ever-at which reemployment is held to be a virtual impossibility as a matter of law. Certainly, it would be remiss

to ignore the limitations that age can place on efforts to secure other employment. However, limitation should never automatically translate into prohibition.

Each claimant is different, with different levels of motivation, initiative and resourcefulness. The claimant in *Bryant* is an excellent example of a claimant who was motivated to work well beyond retirement age and was resourceful enough to find a job that valued the experience that his advanced age brought.

This underscores the commission's responsibility to affirmatively address the age factor. It is not enough for the commission to just acknowledge claimant's age. It must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects.

*Id.* at 416-17.

{¶ 76} The SHO's order of June 29, 2010 appropriately addresses decedent's age. That is to say, while her age of 73 years was viewed as a "detriment" to her ability to return to work, it is not, nor can it be, a complete bar to employment.

## Education

{¶ 77} Ohio Adm.Code 4121-3-34(B)(3)(b) provides:

"Education" is primarily used to mean formal schooling or other training which contributes to the ability to meet vocational requirements. The numerical grade level may not represent one's actual educational abilities. If there is no other evidence to contradict it, the numerical grade level will be used to determine educational abilities.

{¶ 78} In its June 29, 2010 order, the commission noted that decedent had a "twelfth grade education." In that regard, the order concludes:

The Injured Worker's level of education would be a benefit to her ability to find employment in the sedentary work environment.

{¶ 79} It can be noted that, on decedent's PTD application, she indicated that she graduated from high school in 1945 which involved completion of 12 years of schooling.

{¶ 80} Here, relator endeavors to diminish the value of decedent's high school education. Relator asserts that decedent's "high school education from 1945 is highly irrelevant to performing work in 1999." (Relator's brief, at 22.) Relator also points to Dr. Stoeckel's testing results.

{¶ 81} However, Ohio Adm.Code 4121-3-34(B)(3)(b)(iv) provides:

"High school education or above" means twelfth grade level or above. The G.E.D. is equivalent to high school education. High school education or above means ability in reasoning, arithmetic, and language skills acquired through formal schooling at twelfth grade education or above. Generally an individual with these educational abilities can perform semi-skilled through skilled work.

{¶ 82} In *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139 (1996), the court states:

The freedom to independently evaluate nonmedical factors is important because nonmedical factors are often subject to different interpretation. We have already recognized this fact with regard to age and education. As stated in [*State ex rel Ellis v. McGraw Edison Co.* (1993), 66 Ohio St.3d 92, 94, 609 N.E. 2d 164, 165]:

"The commission exercised its prerogative in concluding that, at age fifty-one, claimant was young, not old, and that his age was a help, not a hindrance. So, too, is the conclusion with regard to claimant's education, which also derives support from the record. More so than claimant's age, his education can be interpreted as either an asset or a liability. While his grade school level spelling and below-average reading ability clearly can be perceived negatively, the same rehabilitation report that determined these academic skills to be a limitation nonetheless concluded that his high school education was an asset. The commission was persuaded by the latter conclusion. *Id.* at 94, 609 N.E.2d at 165-166.

*Id.* 141-142.

{¶ 83} Here, the commission was not required to lessen the value of decedent's high school education because the graduation date was in 1945 as opposed to one of more recent vintage. Obviously, the graduation date of any graduate recedes in time as the graduate ages.

{¶ 84} Moreover, the commission was not required to devalue decedent's high school education because of Dr. Stoeckel's testing.

{¶ 85} Clearly, it was well within the commission's fact finding discretion to view decedent's 1945 high school education as an asset to her re-employment, notwithstanding that graduation occurred many years ago.

## Work History

{¶ 86} Ohio Adm.Code 4121-3-34(B)(3)(c) states:

(iv) "Transferability of skills" are skills that can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the injured worker. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.

(v) "Previous work experience" is to include the injured worker's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the injured worker may be able to perform. Evidence may show that an injured worker has the training or past work experience which enables the injured worker to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator.

{¶ 87} In its June 29, 2010 order, the commission addresses decedent's work history or work experience:

Further, the Injured Worker's prior work experience establishes that she was capable of performing work in a sedentary level position and had transferable skills in operating cash registers, answering phones, using copiers, typing and using various payroll/office equipment. These skills would have greatly benefited her ability to find employment in a sedentary position.

{¶ 88} Here, relator does not seem to challenge the commission's consideration of her work experience or that the commission appropriately identified transferable work skills. It can be noted that the commission's identification of transferable work skills is supported by decedent's self reporting on her PTD application.

{¶ 89} In short, the commission did not abuse its discretion in determining that decedent had transferable work skills.

{¶ 90} In its June 29, 2010 order, the commission determined that, despite her age, decedent's education and work history provided her the vocational ability to perform sedentary work. This was a determination well within the commission's fact finding discretion.

{¶ 91} Based upon the above analysis, the magistrate concludes that the commission did not abuse its discretion in its consideration of the non-medical factors.

{¶ 92} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).